Good morning, ladies and gentlemen. This is the time for argument in United States v. Valverde. We assume that counsel is prepared to proceed, so counsel for appellant may make your argument. Thank you, Your Honor. Your Honor, of course, the government is understanding the moral life of the United States. Good morning. The government is understanding that this was a moral argument set for the defendant's motion. And if that's the case, then would you prefer that the defense proceed first? Aren't you challenging the district court's dismissal of the indictment? Yeah. I beg your pardon? Aren't you appealing the district court's dismissal of the indictment? Yes. We're not arguing that? Yes, we are arguing that. My understanding, however, was that that matter had been submitted pending the issuance of the mandate of United States v. George, and that this matter is before the Court on the issue of defense's motion to stay or lift the stay of that matter and then proceed on the issue before the Court. Are you prepared to discuss both issues, the Commerce Clause issue and the retroactivity issue? I'm perfectly – I'm better prepared to discuss the retroactivity issue, and I can proceed. Well, I think that's the issue that needs more argument in view of the fact that we still have a decision on the Commerce Clause issue that's outstanding. Correct. If I may, it appears to the government, Your Honor, that the principal issue before the Court is whether the Attorney General's invocation of the good cause finding bypassing the Administrative Procedures Act notice and comment period was either arbitrary, capricious, or an abuse of discretion. I thought it was whether there was a justification for one of the good cause issues listed in the definition of good cause. That is correct, Your Honor. Whether delay would be either impractical, unnecessary, or against the public interest. And I think in – but the APA, upon the Attorney General's finding of good cause for bypassing the rules, the Court then would look to – its review would be arbitrary, capricious, or an abuse of discretion. Now, in reviewing the defendant's pleadings, they're applying a de novo standard of review. And in reliance upon that, they cite the Reno-Sparks case, which I think is factually distinguishable. Are there any cases, circuit court cases, other than the Sixth and the Fourth? On this issue? Yes. The Eleventh Circuit in Dean found that the Attorney General's good cause finding was appropriate and did – was not arbitrary, capricious, or an abuse of the Attorney General's discretion. It did find that the public interest was met. Well, what do you think is the strongest reason given for doing this? For the finding of the public interest? I think, Your Honor, that there is a significant Federal interest in ensuring – and this is certainly what the whole intent of SORNA was – to ensure that individuals like Mr. Valverde, who were – had prior sex offense convictions, did not fall under the law enforcement radar screen. As this panel is probably more aware than I am, child sexual abuse is an insidious crime, and that parents, communities, law enforcement officers need to be able to identify any potential threat in their community. And SORNA, while it may not be the perfect answer to that, is one answer that helps to address that issue. What the Attorney General found, which actually triggered the issuance of the interim regulation, was that there was a trend of sex offenders who were convicted prior to the enactment of SORNA in July of 2006 who were traveling interstate, not registered in a new state, and then claiming that they didn't fall under SORNA's purview because they were convicted prior to the enactment date, and by virtue of the language in Section D of 16913, the Attorney General hadn't issued its interim regulation. And so they were saying, it didn't apply to me, notwithstanding the other language that, well, I guess what troubles me about that is that they had to register someplace under some law. Correct. And SORNA was passed to provide a Federal statute that would criminalize Federally, but it took a long time for Congress to pass SORNA, and the prior law was, in effect, for a long time. So I guess the fact that for a brief period of time they would say it doesn't apply to me yet doesn't seem like a terribly big threat. Well, I think one has to look at maybe the facts in this case can best illustrate the threat that I think that was posed by the ambiguity as to whether SORNA was effective as to all sex offenders up until the interim regulation was implemented. Take Mr. Valverde. Mr. Valverde was convicted of multiple child molestation offenses. He served time for that. Shortly before his release from prison, he was advised that he had a duty, and he signed the acknowledgment form recognizing his duty to register. Just before his release from custody, he was told that he would have to report to his parole officer in Vallejo. He was taken to the Stockton Greyhound bus station, given a ticket to Vallejo, and reminded he was to go to Vallejo and report in and then register. What did he do? Nothing. He didn't do that. He didn't go to Vallejo. He didn't register. He didn't report to his parole officer. Rather, he got on a bus and headed east to Missouri. Was this duty under SORNA or under some other statute? Well, this was a duty that was imposed by the State of California as a consequence of his conviction. However, SORNA was devised to try to develop a comprehensive plan that would allow States, as well as the ---- But if he had a duty under State law, why wasn't that problem solved under State law? Well, in this case, though, he transported himself from one State to another. And while California obviously had an interest in Mr. Valverde and knew about the violation, Missouri also had an interest in Mr. Valverde because that's where he ended up, as well as did the other States through which he passed, Nevada, Utah, Colorado, Kansas, if he went the route that I would go if I were going to Missouri. So what we're trying to do, though, is get a handle on where these offenders are. And I think that the people of Missouri had ---- I don't think anyone's questioning SORNA at the moment. The question is Congress didn't decide that retroactivity was that important. At least that's the decision of most of the circuits, including our circuit. And if Congress had said retroactive, we wouldn't be here. Instead, Congress said, well, the attorney general should decide whether it's retroactive. And then for seven months, the attorney general did nothing. And thereafter waited another year to issue the final regulation. It's a little difficult to see what the urgency was in the mind of either Congress or the attorney general. Well, I would respectfully direct the Court's attention to the dissenting language in the Kaine decision, in Judge Griffin's dissent, where he actually parsed out the language of subsection D. And the language says that Congress shall ---- that the attorney general shall have authority. Identifying that language or interpreting that language to be permissive and not mandatory. And his conclusion was that Congress or the attorney general had the right to be able to issue regulations relevant to those sex offenders convicted before 2006, but was not required to. And certainly the ---- and I understand what the Court's concerns are about the delay of the seven months. It was the department's belief that in light of that language and the other language in section 16, 913a, b, and c, that said a sex offender shall, a sex offender shall, that that was mandatory. And it was the department's belief that SORNA was effective of its full force as to all sex offenders. When it realized that there was some ambiguity, then what the attorney general sought to do was to close that ambiguity. Okay. Well, let me ask you this. The rule, the interim rule is actually effective for what period of time? What does it cover? Well, it's the government's belief that the interim rule is effective as of the day that the regulation was implemented. Right. I understand that. But when does it end? Does it end when the ---- when does the permanent rule? I'm trying to find its relation because I may be wrong, but I thought that there was notice and comment going on. There was. And that would have been August 1, 2008, which was 30 days after the attorney general issued the final guidelines. And so that's when it became effective. Had the ---- It became effective. That's when the notice and comment period would have ended. And when the interim ---- For a date. For the interim regulation. Okay. Correct. However, had the attorney general not found good cause and issued its findings, which were consistent in terms of its rationale, with Congress's concerns, which gave rise to SORNA, then additional months would have passed and individuals like Mr. Valverde would have continued to fall under the scope ---- Was the interim rule intended to go into effect, to be in effect during the period when the notice and comment was running on the permanent rule? Yes. Yes. And that was the whole reason why the attorney general showed good cause. Yes. So in effect, you're saying there's no reason to have two notice and comment periods. That's correct. That's correct. And delay the effect of the statute. Okay. Can you tell a practical ---- Can I ask a question? Go ahead. I just have one question. What's the government ---- the district court did not reach this issue? That's correct. What's the government's position on whether we should remand to the district court? I think this is an issue of law, Your Honor, and I am comfortable with this court deciding ---- The government believes it should be decided here. Yes. Okay. Thank you. Can you just tell me practically? Maybe it doesn't matter, but is the defendant required to register even without SORNA? I mean, if he got out tomorrow ---- Yes, he would be. He would be required to register. Even without SORNA, were there no requirement to register federally, then, yes, he would be obligated to register in the state of California. If he moved to another state, as he did in this case and failed to register, he would likewise be required to register in Missouri. Is your interest in this case purely to get a legal decision? No. If we were to remand and he were convicted, would he have to serve any more time? Not likely. The only difference is he'd be required to register? Well, he's already required to register under existing prior convictions. So what effect would this have if you're not interested in having a legal decision and there's no practical difference? Why are we here? I think that one important issue before this Court is how it views what standard it applies to this issue of good cause. This is an issue that's going to come up over and over and over again down the road. You're interested in the legal decision. I'm interested in the legal issue.  I want to ask you a question. Okay. Go ahead and finish. You can finish your answer. But there are all sorts of future implications with respect to Mr. Valverde. And that is, if Mr. Valverde is a recidivist offender, and I'm not saying that he is, but if he is a recidivist offender, then one thing that a future district court sentencing judge can look to is his prior criminal conduct, which includes this offense. And that means this is what this essentially would do would be to find, convey to the district court judge that this is an offender who doesn't obey the law and who doesn't follow court orders, to which he doesn't register. Okay. Let me ask you. We'll give you a minute to respond to questions after this side. But we have other we've had other situations with interim rules. I think we've had a lot of them in the immigration field. What's the closest analogy to this that you would ask us, the government would ask us to look to in terms of cases considering the reasons for interim rules? Bypassing notice and comment. Analogy in terms of what would be a circumstance that would show good cause? In history, when have courts considered interim rules closest to this? We have lots of we have some cases on not on making rules effective immediately. I'm just wondering if there's any analogy that you know of in the area of interim rules. You know, I'm not that conversant with what other agencies do, but it strikes me as though something in the Food and Drug Administration where there may be some dangerous substance out there where the public interest and public safety would be at risk. Okay. And you're not familiar with any litigation cases? No. I'm not. Okay. Thank you. Thank you. Any further questions at this point? All right. Thank you. Thank you. We should hear from them happily. Good morning. I'm David Porter from the Federal Defender's Office, and I represent Mark Valverde. I appreciate the panel moving the oral argument. Having waited seven months after the passage of SORNA to issue an emergency regulation, Attorney Alberto Gonzalez bypassed the notice, comment, and publication requirements of the APA. It was therefore incumbent upon him to explain what emergency situation, what real harm, was to be avoided if the regulation took effect one month later, that is, eight months after SORNA's passage. In other words, what was the increasing risk that real harm would occur if the interim rule became effective eight months after SORNA's passage rather than seven? If we take ourselves back to February 28, 2007, the question could be put more starkly, why now and not 30 days later? Perhaps the government is going to answer that question today, but — You're saying that had the notice and comment period that occurred after the interim regulation occurred before, that then the interim regulation would have been effective? Yes. Yes. They would be complying with the Administrative Procedures Act to give interested parties notice, 30 days' notice, an opportunity to comment before the regulation is put into effect. That's what the APA requires. And what's the effect, then, of having that period occur afterwards? It's a violation of the statute for which the APA itself says that that is an unlawful act. And as the government wrote on its — on page 5 of its last brief, and as the government's confirmed here today, what it's saying is SORNA is important. It says the Attorney General modeled Congress's purpose in enacting SORNA in the first place when doing the regulations. It keeps saying SORNA is important, SORNA is important. And as Judge Reinhart has observed, we're not talking about whether SORNA is important or not. We're talking about did the regulation meet the emergency good cause exception. And — I ask you a question Judge Schroeder asked earlier. Is abuse of discretion the standard for determining whether the Attorney General's explanation of good cause is valid? I don't think the law is clear in the Ninth Circuit which standard is appropriate. We've cited the Reno-Sparks case as requiring de novo review. The government has cited other cases suggesting that it is an abuse of discretion. It has not been decided by this Court. The — do you know which of the circuits that — three circuits have decided this? I think the Fourth and Sixth, I don't think, use that standard. Did the Eleventh use that standard? I believe the Eleventh used the abuse of discretion standard. But, you know, I think that's, in the end, a red herring here. I don't think that's the important issue because I think we win even under an abuse of discretion standard. Judge Schroeder asked what's the closest analogy. And I'll just take it from the government's brief. The government cited Hawaii Helicopter Operations Association. This was a 1995 opinion written by Judge Schroeder where the FAA issued without notice and comment a regulation saying that helicopters had to fly 1,500 feet minimum. These were tour helicopters in Hawaii because the topography of Hawaii was such that if there was — They were dropping out of the sky. They were dropping out of the sky. And there was — so they passed this regulation without notice and comment. After a series of seven helicopter accidents involving four fatalities, which occurred in the first nine months of 1984, and the regulation was promulgated in September, the ninth month of 1994, Judge Schroeder observed what did the FAA say about why it had to bypass notice and comment? The FAA listed specific factors supporting its reasons for issuing the regulation. These facts included, one, that there had been 20 air tour accidents between 91 and 94, including 24 fatalities. Two, among the 20 accidents, seven had occurred in 1994. Three, the most recent fatal accident occurred in July of 94. And four, the most recent nonfatal accident occurred September 4th, 94, only three weeks before the regulation was promulgated. That is an emergency. Does your client now, if he were to get out of jail tomorrow, he has to register in Desoina? Yes. Well, within three days of moving his residence, he would have to register. How long has he been in jail now? He's been in jail since he was arrested back in January of 2008, I believe. 2001? 2008. But it doesn't have to be an emergency, does it? I think that's a semantic question. I mean, you know, there's confusion about what law applies, that notice and comment is running anyway. If there are problems with the rule, it will get ironed out in the permanent rules, notice and comment. There does seem to be, you know, a basis for saying let's settle the confusion and let people know what their obligations are, the prosecutors, the defense attorneys, the deviants, everyone. Right. There are two answers to that. The first aspect is, you're right, technically it doesn't have to be an emergency. That word isn't used. But I think that's a semantic quibble. I think the Ninth Circuit has said it's essentially an emergency provision and it's aimed at avoiding real harm. So whichever way we discuss it, I think it comes out the same in the end. But the point about uncertainty is that if that were the case, then the exception would swallow the rule. So how often regulations are meant to avoid uncertainty? What the government would have to prove here is that there's some burgeoning uncertainty that would require immediate action, not 30 days later, but now, immediately. And plus, if you look at the Attorney General's, the way he went about it, he said, yes, this is an emergency, we're doing it now, and now we ask for comments. Well, that increases uncertainty, because if Alberto Gonzales was truly interested in how those comments affect the regulation, he wouldn't say, oh, well, the regulation is effective now, and now I'm going to ask for comments about it. That increases uncertainty. It doesn't decrease uncertainty. Do you want to say anything more about the merits and with respect to the George case? I have a book that I could say about, but I don't know that. I think one of the Your Honors has an NBANC panel he has to get to in another half hour, and I think that in light of the fact that the NBANC, I mean, that the NBANC panel, that George has issued, it's still there, I would bite my tongue and submit it on this record. Thank you. Thank you very much. Are there any more questions of the government? No. All right. Thank you. The matter just argued is submitted, and this Court for this session will stand in adjournment. Thank you.
judges: Schroeder, Reinhardt, Hawkins